UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 24 CR 411 |
| v. | ) | |
| | ) | Hon. Sunil R. Harjani |
| KENNETH MERRITT | ) | District Judge |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Carjackings are among the most personal and terrifying crimes committed in this District. The victims are unexpecting and innocent, and the perpetrators invade their private vehicles typically with guns and threats. Any carjacking is a serious, dangerous offense. Defendant's crime in this case, however, went well beyond a normal carjacking. On November 2, 2023, defendant Kenneth Merritt invaded a family's home. He and his co-defendant accosted them in their backyard. Defendant threw the mother violently to the ground and ripped her purse from her arms. Then, while the victims scrambled away, defendant threatened to kill them as he took their Audi. Defendant did all of that while the victims' 12-year-old daughter stood by petrified that her parents would be killed. This crime was heinous and violent. The trauma he inflicted on his victims will take years to repair.

Troublingly, this is not defendant's first gun crime, nor is it his first violent crime. Defendant was convicted of armed robbery in 2017 and sentenced to 10 years in prison. But that significant sentence did not deter him from getting out and committing an even more violent crime while on parole. No sentence will repair the pain defendant has inflicted upon his victims, but a lengthy sentence is required to

ensure defendant never commits such violent crimes again. The government recommends a sentence of 106 months to run consecutive to the mandatory minimum of 84 months. The government recognizes 190 months is a significant sentence, but given defendant's extreme violence and his criminal history, this sentence is warranted.

## I. BACKGROUND

On September 4, 2024, defendant was charged in an indictment with carjacking, in violation of Title 18, United States Code, Section 2119, and using a gun in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c). Dkt. 1. On January 6, 2026, defendant pled guilty by declaration to both counts of the indictment. Dkt. 48, 49. Defendant is scheduled to be sentenced by this Court on June 9, 2026. Dkt. 59.

## II. ADVISORY GUIDELINES CALCULATION

Count Two requires a mandatory minimum sentence of 7 years because defendant brandished his firearm during the carjacking he committed.

As to Count One, the Probation Office has calculated defendant's pre-acceptance offense level as 27, based upon the carjacking, the injuries to the victims, his physical restraint of one of the victims, and the value of the vehicle taken. PSR at ¶¶ 23-36. The government agrees with the Probation Office's offense level calculation. The government also agrees with the Probation Office's determination that defendant has a criminal history category of II. PSR ¶ 52-54. Defendant thus has a final offense level of 24, resulting in a sentencing guideline range of 92 to 115 months' incarceration, to run consecutive to the mandatory 84 months pursuant to Count

Five. PSR ¶ 117. The Probation Office has recommended a total sentence of 168 months.

## III. THE 3553(A) FACTORS WARRANT A SIGNIFICANT SENTENCE WITHIN THE GUIDELINES RANGE

The Sentencing Guidelines provide an initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. The Guidelines thus "remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."). The ultimate goals of the Guidelines are "uniformity and proportionality." *Rita v. United States*, 551 U.S. 338, 349 (2007). Put differently, a Guidelines sentence ensures that a defendant does not receive an unfairly high or low sentence simply based on the district in which he is sentenced or the judge who sentences him. In addition to the Guidelines, the court must consider the factors set forth in 18 U.S.C. § 3553(a).

Here, the Guidelines range fairly reflects defendant's criminal history, the extremely reckless and violent crime he committed, and the need to deter defendant and others from committing similar offenses. A Guidelines sentence is warranted, and given defendant's criminal history, a sentence toward the top of the Guidelines range is justified.

### A. The Nature and Circumstances of the Offense

In November 2023, defendant made a plan to commit a violent carjacking in the Beverly neighborhood of Chicago. Defendant was prepared for crime. He was wearing all black and a hood. He had a loaded gun. Defendant and his co-defendant took the bus to Beverly, a residential neighborhood on Chicago's southwest side filled with apartments and single-family homes, many of which have long driveways leading to residential backyards.

At about 8:45 p.m., defendant and his co-defendant identified their target. They hid near a home with a long driveway and watched as Victim A and her 12-year-old daughter pulled into their driveway in a Range Rover and parked in the garage in the backyard of their home. Victim A and her daughter were returning from volleyball practice. Victim B, the father and husband, was inside their home. After Victim A parked the car, her daughter got out and walked to the home, carrying her volleyball gear. Then, Victim A got out of the car and started walking toward the back door of her home.

The defendants then sprung from their hiding place and attacked Victim A. The entire carjacking was captured on surveillance camera. The government intends to present this video as an exhibit at sentencing, and it was included in the government's version of the offense. Defendant's violence, as captured on the video, shows a complete disregard for human life. This callous violence is aggravating.

First, defendant ran up to Victim A and threw her to the ground. He violently ripped her pursue from her shoulder. As Victim A scrambled on the ground and

screamed in terror, Damarri Conner ran up to her with a gun in his right hand. With his left hand, he punched Victim A in the face, causing her to collapse on the ground. Below is a screen shot of defendant violently ripping Victim A's purse from her arm as she falls to the ground helplessly:



Conner continued to point a gun at Victim A from point blank range as she cowered in fear. Defendant was right next to Conner, yelling at Victim A in attempt to get the keys to the car. Below is a screenshot of Conner pointing the gun at Victim A while defendant goes through her purse, and Victim A raises her arm to block getting shot:



Seconds later, Victim B, Victim A's husband, came out to try and help her. He yelled at defendants to stop. But they did not stop. Instead, Conner turned toward Victim B, racked the slide of his gun, and pointed it right at Victim B. Defendant also ran toward Victim B, threatening him. Thankfully, Victim B did not have a legal gun, and the carjacking did not devolve into a shootout, but the carjackers' actions show they were prepared to shoot and kill if necessary. Importantly, although defendant's gun is not visible on surveillance, Victim B reported that defendant also displayed a gun during the carjacking.

Victim B came down from the porch and tried to appease the defendants by helping them get his cars. Victim B was calm. He did not want to fight the defendants; he wanted to protect his family and get the carjackers away from his home. But, despite Victim B's composure, the carjackers vicious threats and violent behavior continued. Defendant and his co-defendant moved Victim B by force and at gunpoint

over to the family's two vehicles. As Victim B desperately tried to explain to the carjackers how to start the car, the carjackers forced both victims to the ground, and yelled threats like "you got three seconds, shoot her," and "shoot her if she moves." Eventually, the carjackers figured out how to start the victims' Audi and drove off.

Defendant's crime was heinous and violent. It is a miracle that no one was hurt or killed because of his actions. Victims A and B easily could have been shot. Even though they were not hurt physically, the impact of defendant's crimes on his victims will last long after he is sentenced. Any carjacking is uniquely personal—an invasion of someone's private vehicle. But here, defendant invaded his victims' home, the most sacred place for any family. He physically injured his victims, but he also traumatized them, leaving psychological scars that have yet to heal. As detailed in the PSR, Victim B was terrified. He believed he was going to die that night. His wife, Victim A, has not recovered. Three years later, she suffers from nightmares and has not been able to sleep in the same bed as Victim A due to her trauma. As he put, she is a "different person now." Defendant's actions changed Victim A forever.

The victims' daughter is also forever changed. She was only 12 years old when she saw her mother thrown to the ground and punched and saw a gun pointed at her parents. This happened in her own backyard, a place she has to walk through every day. Victim B described a recent incident when they were at a Halloween festival because costumed actors triggered memories of the carjacking and caused his daughter to freeze up and leave her friends.

In sum, defendant's actions will reverberate for years. He has forever scarred the victims' family. Defendant's punishment must reflect the grave seriousness of his crimes, the trauma he inflicted upon innocent people, and the danger and violence he caused. A sentence of 190 months is appropriate given the scope and seriousness of his crimes.

**B. Defendant's History and Characteristics**

Defendant is 29 years old and has lived in the Chicago area for his whole life. PSR ¶¶ 79-80. Defendant's father was incarcerated while he was young, and he had a rough childhood. PSR ¶¶ 80-81. Defendant's mother worked as a home health aide. PSR ¶¶ 81-82. Defendant is in a long-term relationship and does not have children. PSR ¶¶ 85-86. Defendant has suffered trauma in his life. His half-brother was killed in a drive-by shooting, and his sister was recently seriously injured in a bad car accident. Likely as a result, he has suffered from mental health issues and depression periodically. PSR ¶¶ 97-99. Defendant has held jobs when not incarcerated. PSR ¶ 102.

Unfortunately, despite being only 29 years old, defendant has a lengthy criminal history, and the crime he committed here was not his first violent offense. In 2017, at the age of 20, he was convicted of two separate armed robberies and a separate gun crime. PSR ¶¶ 48-50. In two of the crimes, just like here, defendant used a gun to take the victim's property and vehicle. PSR ¶ 49-50. In another of the crimes, defendant was arrested with fraudulent credit cards and a loaded gun. PSR ¶ 48. Defendant received a concurrent 10-year sentence for these crimes. He was released in 2021 on parole. Defendant committed this crime, another carjacking with a gun

and innocent victims, while on parole for the exact same crime. That is extremely aggravating and shows a complete disregard for the law and inability to be deterred, even by significant prison sentences. Defendant also has convictions for battery (while in prison), burglary, resisting a peace officer, criminal trespass, and possession of a stolen vehicle. PSR ¶¶ 43-47, 51.

Defendant is no longer a teenager. He is almost 30. He has a long history of committing violent crimes that have harmed innocent victims, and at this point, his crime cannot be considered a youthful mistake. While defendant's difficult upbringing offers some mitigation, it does not warrant a departure from the Guidelines range. A previous 10-year sentence did not deter defendant from committing an incredibly violent crime while on parole. It is important that the sentence here be sufficiently significant to ensure that defendant never commits a violent crime again.

### C. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment and Deterrence

Defendant's crime terrorized innocent Chicagoans and showed a complete disregard for human life, for societal norms, and for the law. A sentence toward the top of the Guidelines range will appropriately punish him for the harm he has caused, it will provide some measure of justice for those he victimized, and it will deter him from continuing to offend.

General deterrence is also a factor in this case. While the murder rate in Chicago has thankfully declined in recent years, carjackings, many committed by

unrepentant carjackers like defendant, have spiked, doubling from 2018 to 2023.[1] These violent carjackings are committed by a relatively small number of people, but they have a huge impact on the citizens of the Northern District as a whole. As reflected in the statement from the victim, these crimes cause significant trauma, and they are uniquely personal. Carjackings like those here not only leave the victims scarred, but they impact the sense of safety and security for all Chicagoans. Indeed, Victim A reported several families moving away from his neighborhood in the months after this carjacking. Minimal sentences simply do not deter those who would commit such dangerous crimes. Only a high Guidelines sentence will deter defendant and others like him who would terrorize innocent Chicagoans without remorse.

## IV. RECOMMENDED CONDITIONS OF SUPERVISED RELEASE

Given the circumstances of the offense and all the factors set forth in Title 18, United States Code, Section 3553(a), the government recommends that the Court impose the maximum period of supervised release of five years.

The mandatory, discretionary, and special conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on pages 24 through 30 of the PSR. The government agrees with the conditions proposed in the PSR and concurs with the probation officer's rationale for these conditions. Specifically, the government agrees that discretionary conditions (4), (6), (8), and special conditions (3) and (13) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting

[1] *See* Illinois Policy Institute, *Carjackings More Than Double from 5 Years Ago*, December 5, 2023, *available at* https://www.illinoispolicy.org/carjackings-more-than-double-in-chicago-from-5-years-ago/.

the public from further crimes by the defendant, and assisting the defendant in reintegrating into society upon his release. Providing defendant with adequate educational and job training will help him achieve employment, which will be crucial in helping prevent recidivism. The government further agrees that discretionary conditions (7), (9), (14), (15), (16), (17), (18), and (22) and special conditions (5), (6), (7), (10), and (11) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed.

## V. CONCLUSION

Defendant committed an incredibly violent carjacking that traumatized his victims. For the reasons set forth above, the government respectfully requests that this Court impose a sentence of 190 months.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Elie Zenner
ELIE ZENNER
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 697-4032